

PLAINTIFF'S
EXHIBIT

# COMMONWEALTH OF VIRGINIA



## RICHMOND CITY CIRCUIT COURT
### Civil Division
### 400 NORTH 9TH STREET
### RICHMOND VA 23219

### Summons

To: WEST END OPERATIONS, LLC
SVE REGISTERED AGENT
CORPORATION SERVICE COMPANY
BANK OF AMERICA CENTER,16TH FL
1111 EAST MAIN STREET
RICHMOND VA 23219

Case No. 760CL15003769-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, September 02, 2015

Clerk of Court: EDWARD F JEWETT

by _____
(CLERK/DEPUTY CLERK)

Instructions:      ALSO SERVING REQUESTS FOR ADMISSION

Hearing Official:

Attorney's name:   ROHRSTAFF, SANDRA M
703-260-6070

VIRGINIA:

### IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

EDDIE A. SHELTON, JR., Administrator *de bonis non* )
of the Estate of FRANCES SHELTON, deceased, )
                                   )
       Plaintiff,                    )
                                     )
v.                                      )    Case No. _____
                                     )
WEST END OPERATIONS, LLC, )
d/b/a Glenburnie Rehabilitation and Nursing Center )
Serve: Registered Agent )
       Corporation Service Company )
       Bank of America Center, 16th Floor )
       1111 East Main Street )
       Richmond, Virginia 23219 )
                                     )
AND )
                                     )
CARE VIRGINIA MANAGEMENT, LLC, )
d/b/a CareVirginia )
and d/b/a Glenburnie Rehabilitation and )
Nursing Center )
  Serve: Registered Agent )
       Corporation Service Company )
       Bank of America Center, 16th Floor )
       1111 East Main Street )
       Richmond, Virginia 23219 )
                                     )
       Defendants.                 )

### COMPLAINT

COMES NOW the Plaintiff, Eddie A. Shelton, Jr., Administrator *de bonis non* of the

Estate of Frances Shelton, deceased, by counsel, and moves the court for judgment against

Defendants, WEST END OPERATIONS, LLC, d/b/a Glenburnie Rehabilitation and Nursing

Center and CARE VIRGINIA MANAGEMENT, LLC, d/b/a CareVirginia and d/b/a Glenburnie

Rehabilitation and Nursing Center (referred to herein as "Defendants"), and alleges as follows:

1

1.      Plaintiff Eddie A. Shelton, Jr., is an adult individual who qualified as the Administrator *de bonis non* of the estate of his mother, Frances Shelton, deceased, in the City of Richmond on Monday, August 17, 2015. See attached Exhibit 1.

2.      At the time of her death, decedent resided in the City of Richmond.

3.      WEST END OPERATIONS, LLC, d/b/a Glenburnie Rehabilitation and Nursing Center (hereinafter "WEST END OPERATIONS") is a limited liability company, which at all times material hereto owned, managed, and/or operated a licensed nursing home and long term care facility located in Richmond (hereinafter referred to as the "Facility").

4.      WEST END OPERATIONS's Registered Agent is Corporation Service Company, located at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia 23219.

5.      WEST END OPERATIONS is a Virginia corporation, which at all times material hereto engaged in substantial business activity as the owner, operator, and/or manager of skilled nursing facilities, including the Facility.

6.      CARE VIRGINIA MANAGEMENT, LLC, d/b/a CareVirginia and d/b/a Glenburnie Rehabilitation and Nursing Center (hereinafter "CARE VIRGINIA MANAGEMENT") is a limited liability company, which at all times material hereto owned, managed, and/or operated a licensed nursing home and long term care facility.

7.      CARE VIRGINIA MANAGEMENT's Registered Agent is Corporation Service Company, located at Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia 23219.

8.      CARE VIRGINIA MANAGEMENT is a Virginia corporation, which at all times material hereto engaged in substantial business activity as the owner, operator, and/or manager

2

of skilled nursing facilities, including the Facility.

9.     At all material times, the Defendants enjoyed the benefits and privileges of transacting business under the laws of the Commonwealth of Virginia and was, in fact, transacting business in Richmond, Virginia, by establishing, conducting, maintaining, and operating nursing homes, including the Facility, even though one Defendant, WEST END OPERATIONS, LLC may not actually have been licensed to do so.

10.     Whenever in this Complaint it is alleged that the Defendants did any act or failed to any act, it is meant that the officers, agents, or employees of the Defendants, respectively, performed, participated in, condoned, or failed to perform such acts while in the course and scope of their employment relationship or agency relationship with the Defendants.

11.     At all material times, all staff, personnel, employees and/or contractors at the Facility were actual or apparent agents, employees and/or servants of the Defendants so that any acts or omissions on the part of the staff are attributable to and imputed to the Defendants pursuant to the theory of *respondeat superior*.

12.     On or about November 15, 2013, Frances Shelton was 86 years old when she was admitted to the Facility for short term rehabilitation after suffering a mild stroke. A full recovery was expected.

13.     Frances Shelton remained under the Defendants' care and treatment as a resident of the Facility until on or about January 23, 2014.

14.     While a resident at the Facility on January 23, 2014, at approximately 6:00 p.m., a member of Defendants' nursing staff reported that Mrs. Shelton had "large brown liquid stool smelling vomit." This event occurred after approximately two or more days when Mrs. Shelton ate between 25-49% of her meals, complained of nausea and vomiting, and according to

3

physician's notes, the staff reported that her last bowel movement was at least two days before.

15.     An x-ray performed on January 23, 2014, showed that Mrs. Shelton had a large fecal impaction measuring up to 10 cm and colonic distention.

16.     Mrs. Shelton's stomach was also very distended and had been for several days.

17.     A fecal impaction is a condition where feces are trapped in the lower part of the large intestine, causing an obstruction. The stool collects in the bowel and becomes hardened.

18.     Frances Shelton's fecal impaction was caused by, and/or allowed to progress because of the negligence of the Defendants as described more fully herein.

19.     Mrs. Shelton had been deteriorating noticeably in the days prior to her discharge from the Facility.  On January 23, 2014, EMS was called by the Facility at the direct request of Mrs. Shelton's family.  EMS arrived on the scene, assessed Frances Shelton and transported her by ambulance to VCU Health Center / Medical College of Virginia Hospital.

20.     Frances Shelton was admitted to VCU Health Center / Medical College of Virginia Hospital on January 24, 2014, and remained a patient there until she died later that same day.

21.     The causes of Frances Shelton's death were septic shock and respiratory failure.

22.     Frances Shelton suffered septic shock because of the fecal impaction.

23.     The failure of the Defendants' agents, employees and/or staff to properly assess, monitor, and provide adequate and appropriate assistance for bowel and bladder care, vital signs, hydration and nutrition, as well as interventions in regard to abdominal distention, fecal impaction, and constipation care planning was a direct and proximate cause of Frances Shelton's fecal impaction and death on January 24, 2014.

24.     At all material times, the Defendants represented to the public, including Frances

4

Shelton and her family, that their nursing home was licensed, certified and qualified to provide services under the Medicare and Medicaid programs.

25.     As a resident of a nursing home entitled to collect payments from Medicare and Medicaid, Frances Shelton was entitled to and had federal and state rights to receive basic and minimum level care, treatment, and services which were adequate, appropriate and in compliance with all relevant federal and state statutes and regulations.

26.     Frances Shelton was admitted by the Defendants' agents, employees and/or staff into the Facility to be rehabilitated, treated, and cared for, in exchange for certain payments.

27.     At the time of her admission, it was known to the Defendants' agents, employees and/or staff that Frances Shelton was at risk for constipation and fecal impaction due to her limited mobility due to the stroke, her use of narcotic medication to treat pain, and her need for stool softeners, among other things.

28.     Defendants' agents, employees and/or staff represented that they were competent to provide Frances Shelton with the necessary care, treatment and custodial services.

29.     Defendants were required to comply with:

(a) Virginia statutes and regulations;

(b) Federal laws and regulations;

(c) Defendants' own policies and procedures; and

(d) The standard of care required for a licensed nursing home in Virginia

30.     Defendants' agents, employees and/or staff were required to provide Frances Shelton, and all other residents of the Facility, with such care as their condition reasonably required.

31.     Defendants' agents, employees and/or staff were also required to care for all of

5

their residents, including Frances Shelton, in a manner and in an environment that promoted the maintenance or enhancement of each resident's quality of life.

32.     Defendants were required to promote care for all their residents, including Frances Shelton, in a manner and in an environment that maintained or enhanced each resident's dignity and respect in full recognition of his or her individuality.

33.     Defendants knew or should have known that it was required to have adequate numbers of qualified and properly trained staff to provide their residents, including Frances Shelton, with the level of care and services required by law and applicable standards of care.

34.     At all material times, Defendants knew the delivery of essential custodial and medical services to residents in their nursing home, including Frances Shelton, depended upon fundamental budgetary and operational decisions made, determined, controlled, monitored, and enforced by Defendants, including:

   a.     The determination of the numbers and nature of staff and expenditures on staffing levels in the nursing home;
   b.     The determination of census/occupancy levels within the nursing home; and
   c.     The determination of the census mix which established the amount of facility revenue and impacted the acuity level and needs of the nursing home residents.

35.     Defendants also knew that the control of staffing costs, the single largest expense to the nursing home business, was vital to protecting and increasing Defendants' profit margins

36.     Defendants' policies and financial decisions caused a gap between the care that was required to meet the basic needs of residents and the care that could actually be provided by the limited staff and resources at the Facility, resulting in the neglect of residents, including Frances Shelton.

37.     Despite their knowledge of the risk of harm and the actual harm caused to residents by such conduct, Defendants' policies and practices deprived residents, including

6

Frances Shelton, of adequate staffing, supplies, and other resources necessary to meet their needs including but not limited to: assessments;  adequate and appropriate Care Plans;  monitoring of each resident's condition, prescribed treatments and medications; assistance with activities of daily living; and maintaining a safe environment.

38.    As a result of the Defendants' oversight in the delivery of medical and custodial nursing care at the Facility, the Defendants acquiesced and engaged in the negligent conduct complained of herein.

39.    Because the Defendants actively participated in and exercised dominion and control over the operations of Facility, the Defendants are directly liable as operators and managers of the nursing home facility.

40.    In addition to being directly liable for the wrongful acts and resulting damages detailed herein, the Defendants are also liable pursuant to one or more of the following alternative legal theories:

a.    Piercing the Corporate Veil

1.    At all material times, the Defendants were alter egos, aliases, dummies, and/or stooges of one another.

2.    Additionally, Defendants were subsidiaries and alter egos of each other, owning, directly or indirectly, a controlling percentage of stock in the licensee Facility.

3.    The unity of interest and ownership between Defendants, respectively, is such that the separate personalities of the legal entities do not exist and to adhere to that separateness would work an injustice.

4.    The management and operations of the Facility was so dominated, controlled and assimilated by Defendants that the Facility was operated as a mere tool or instrumentality and was simply a conduit through which the Defendants conducted the business.

7

5.   The only entity licensed to provide nursing home care in Virginia, West End Operations, was merely a device used by the other Defendant to promote wrongdoing, evade personal obligations, perpetrate fraud or a crime, commit an injustice, or gain an unfair advantage.

6.   Any assertions by Defendants that each was a separate entity with an independent and separate existence is nothing more than a sham and a part of a scheme to perpetrate fraud, promote injustice, and evade existing legal and fiduciary obligations.

7.   The Court should pierce the corporate veil of each of the Defendants, and hold each entity jointly and separately liable for the damages to Frances Shelton.

b.   Agency

1.   At all times material to this lawsuit, the Defendants acted as agents of one another, ratified or authorized the acts or omissions of one or more of the others, and held themselves out as being one unified enterprise and operation.

c.   Joint Enterprise

1.   To the extent that the Defendants are found to be separate corporate entities, the Defendants each remain liable for the acts and omissions of each other because they engaged in a joint venture and enterprise to act in concert in the ownership, operation, management, and maintenance of the Facility.

2.   The Defendants agreed to a common purpose of owning, operating, managing and maintaining the Facility.

3.   The Defendants jointly shared in the profits and had equal rights to control their venture as a whole, as well as to control the operation and management of the nursing home.

## COUNT I: SURVIVAL CLAIM

41.   Plaintiff realleges and incorporates paragraphs 1 through 40 above as though fully stated herein.

42.   As a result of accepting Frances Shelton as a resident, Defendants were under a non-delegable common law duty, as well as that prescribed by standards of care, statutes, and

8

regulations, to provide Frances Shelton with the care and services required as a resident of the Defendants' facility.

43.     Defendants, their employees, and agents breached their duties by engaging in negligence and failure to provide needed care and services to Frances Shelton.

44.     Defendants' course of negligence and disregard of the rights of their residents, including Frances Shelton, included:

a.      Failure to provide sufficient numbers of staff to meet Frances Shelton's fundamental care needs;

b.      Failure to hire and train appropriate personnel to monitor, supervise, and/or treat Frances Shelton;

c.      Retention of and assignment of unqualified and unfit direct care staff to care for Frances Shelton;

d.      Failure to provide Frances Shelton with the necessary care and services to enable her to attain or maintain her highest practicable physical, mental and psychosocial well-being in accordance with an accurate care plan;

e.      Failure to properly monitor, observe and assess Frances Shelton, including, but not limited to those ongoing assessments required by law, especially in regards to bowel and bladder care, vital signs, hydration, nutrition, constipation, abdominal distention and fecal impaction;

f.      Failure to obtain and provide timely and appropriate treatment and medical and nursing intervention to Frances Shelton, especially in regards to bowel and bladder care, vital signs, hydration, nutrition, constipation, abdominal distention and fecal impaction; and

g.      Failure to formulate and update health care plans for Frances Shelton in response to conditions and changes in condition and known problems.

45.     Defendants' breaches of their duties to Frances Shelton were a direct, actual, legal, and proximate cause of Frances Shelton's injuries and damages.

46.     But for the Defendants' conduct and breaches of duty, Frances Shelton would not have suffered the injuries and harms described herein.

9

47. Plaintiff claims such survival damages as the jury may seem fair and just including, but not limited to, damages for:

      a.    medical expenses;

      b.    serious and permanent physical injuries;

      c.    physical pain and suffering;

      d.    embarrassment;

      e.    disfigurement;

      f.    mental anguish and psychological injury;

      g.    inconvenience; and

      h.    other general and special damages, as may be shown at trial.

WHEREFORE, Plaintiff, Eddie A. Shelton, Jr., Administrator *de bonis non* of the Estate of Frances Shelton, deceased, moves the Court for the following relief against the Defendants, jointly and severally, as follows:

      a.    Judgment in the amount of $2,000,000.00 in compensatory damages together with prejudgment interest from the date of injury, and costs in this behalf expended; and

      b.    Any additional relief that this Court deems proper, including costs and fees.

## COUNT II:  WRONGFUL DEATH

48. Plaintiff realleges and incorporates paragraphs 1 through 47 above as though fully stated herein.

49. As a result of accepting Frances Shelton as a resident, Defendants were under a non-delegable common law duty, as well as that prescribed by the standards of care, statutes, and regulations, to provide Frances Shelton with the care and services required as a resident of their facility.

50.   Defendants, their employees, and agents breached their duties, and engaged in a negligent failure to provide needed care and services to Frances Shelton.

51.   Defendants' negligence and disregard of the rights of their residents, including Frances, Shelton included:

a.   Failure to provide sufficient numbers of staff to meet Frances Shelton's fundamental care needs;

b.   Failure to hire and train appropriate personnel to monitor, supervise, and/or treat Frances Shelton;

c.   Retention of and assignment of unqualified and unfit direct care staff to care for Frances Shelton;

d.   Failure to provide Frances Shelton with the necessary care and services to enable her to attain or maintain her highest practicable physical, mental and psychosocial well-being in accordance with an accurate care plan;

e.   Failure to properly monitor, observe and assess Frances Shelton, including, but not limited to those ongoing assessments required by law, especially in regard to bowel and bladder care, vital signs, hydration, nutrition, constipation, abdominal distention and fecal impaction;

f.   Failure to obtain and provide timely and appropriate treatment and medical and nursing intervention to Frances Shelton, especially in regards to bowel and bladder care, vital signs, hydration, nutrition, constipation, abdominal distention and fecal impaction; and

g.   Failure to formulate and update health care plans for Frances Shelton in response to conditions and changes in condition and known problems.

52.   Defendants' breaches of their duties to Frances Shelton were a direct, actual, legal, and proximate cause of Frances Shelton's injuries and damages.

53.   But for the Defendants' conduct and breaches of duty, Frances Shelton would not have suffered the injuries and harms described herein.

54.   As a direct and proximate result of the actions and omissions of the Defendants, their

11

agents and/or employees, and their negligent breaches of standards, common law and statutory duties, Frances Shelton was proximately caused to suffer and die on January 24, 2014, in the City of Richmond, Virginia.

55.     Frances Shelton is survived by statutory beneficiaries pursuant to Virginia Code §8.01-53.

56.     Plaintiff claims such wrongful death  damages  on  behalf  of  the  statutory beneficiaries as to the jury may seem fair and just including, but not limited to, damages for:

    a.     Sorrow, mental anguish, and solace including loss of society, companionship, comfort, guidance, kindly offices, and advice of Frances Shelton;

    b.     Expenses for the care, treatment and hospitalization of Frances Shelton incident to the injuries resulting in her death; and

    c.     Reasonable funeral expenses.

WHEREFORE, Plaintiff, Eddie A. Shelton, Jr., Administrator *de bonis non* of the Estate of Frances Shelton, deceased, moves the Court for the following relief against the Defendants, jointly and severally, as follows:

    a.     Judgment in the amount of Two Million Dollars ($2,000,000.00) in compensatory damages together with prejudgment interest from the date of the death of Frances Shelton and costs as expended;

    b.     Any additional relief that this Court deems proper, including costs and fees.

Plaintiff demands a trial by jury as to all issues involved herein.

12

EDDIE A. SHELTON, JR., Administrator *de bonis non* of the Estate of FRANCES SHELTON, deceased

By Counsel

_____

Daniel W. Cotter, Esquire
Virginia State Bar No.: 24834
Law Offices of Daniel W. Cotter, P.C.
One Decatur Town Center
150 E. Ponce de Leon Ave.
Suite 225
Decatur, GA  30030
Phone: (404) 377-5775
Fax: (404) 377-5750
DCOTTER@COTTERLAW.COM
*Counsel for Plaintiff*

_____

Sandra M. Rohrstaff, Esquire
Virginia State Bar No. 31591
Rohrstaff Law Firm, P.C.
515 King Street, Suite 330
Alexandria, VA 22314
Phone: (703) 260-6070
Fax: (703) 260-6305
Email: Sandra@RohrstaffLaw.com
*Counsel for Plaintiff*

13